[No. 6515–1. Division One. May 29, 1979.]

CHG INTERNATIONAL, INC., *Appellant,* v. PLATT ELECTRIC SUPPLY, INC., *Respondent.*

*Gordon, Thomas, Honeywell, Malanca, Peterson & O'Hern* and *Daniel P. Pepple,* for appellant.

*Gelman & Couture* and *Herbert Gelman,* for respondent.

WILLIAMS, J.—CHG International, Inc., brought this action for a declaration that a materialman's lien filed by Platt Electric Supply, Inc., was invalid, and for an award of damages. Platt counterclaimed for foreclosure of the lien. The cause was tried to the court without a jury and

resulted in a judgment foreclosing Platt's lien. Both parties appeal. We affirm.

The facts are that on August 14, 1975, Platt commenced to furnish materials to a subcontractor on a housing development of CHG. On the same date, Platt mailed CHG a notice of intent to lien pursuant to RCW 60.04.020. This notice was returned to Platt marked "unclaimed." On January 8, 1976, Platt mailed a second notice which CHG received 3 days later. Subsequently, Platt filed a claim of lien for $77,000. It also notified CHG's construction lender of the claim, thus requiring it to withhold construction draws. RCW 60.04.210. The trial court decided that the first notice was of no effect, but that the second notice was good. The court further found that $25,510.26 of the $77,000 claimed was lienable.

■ The first question is whether Platt lost its right to a materialman's lien by claiming an excessive amount. An error in the amount claimed will invalidate a materialman's lien only if it is made with an intent to defraud or in bad faith. *Whitney v. McKay,* 54 Wn.2d 672, 680, 344 P.2d 497 (1959); *Westinghouse Elec. Supply Co. v. Hawthorne,* 21 Wn.2d 74, 150 P.2d 55 (1944). As was said by the court in *Knibb v. Mortensen,* 89 Wash. 595, 596, 154 P. 1109 (1916):

These lien laws tend to burden the sale of property. They must be claimed in good faith. The law will not, indeed, punish the lienor for trifles included, or even for large sums which are fairly debatable in law. But it will not allow an obvious misuse of the statute.

An overcharge, by itself, may be evidence of bad faith, but it is not conclusive. *See Radley v. Raymond,* 34 Wn.2d 475, 209 P.2d 305 (1949). To constitute bad faith, the overcharge must be knowingly made. CHG argues that Platt knew from its own invoices and from information supplied by CHG that the lien claim was excessive. Other evidence was adduced, however, inconsistent with bad faith, which explained the overcharge. This evidence supports the trial court's view that Platt did not act in bad faith or with

fraudulent intent and that there was no obvious misuse of the statute.

The second question concerns Platt's cross appeal from the trial court's determination that the first notice was of no effect. This is important because the lien statute permits a materialman to claim a lien for materials supplied within 60 days preceding the notice of intent to lien as well as for all materials thereafter supplied. RCW 60.04.020. Had the first notice been effective, Platt would be entitled to a lien of about $55,000.

■ RCW 60.04.020 requires either personal service of the notice or service by registered or certified mail "addressed to the owner or reputed owner at his place of residence or reputed residence . . ." The residence of a corporation is its principal place of business. *Suburban Transp. Sys. v. King County,* 160 Wash. 364, 295 P. 124 (1931).

It is undisputed that the first notice was not mailed to CHG's principal place of business and was returned to Platt, undelivered. Platt argues that it substantially complied with the requirements of the statute, because it mailed the notice to an address given to it by CHG's subcontractor and because CHG had actually received other notices mailed by Platt to the same address. That the subcontractor gave the wrong address does not excuse Platt from compliance with the statute. *Seattle Lumber Co. v. Richardson & Elmer Co.,* 66 Wash. 671, 120 P. 517 (1912). Because the statute requires either personal service of the notice or delivery by certified or registered mail, the intent of the legislature is that there be *actual* notice. *See Robel v. Highline Public Schools, Dist. 401,* 65 Wn.2d 477, 398 P.2d 1 (1965); *Van Duyn v. Van Duyn,* 129 Wash. 428, 225 P. 444, 227 P. 321 (1924). When Platt received the notice back marked "unclaimed" it knew that CHG had not received notice and additional effort was required.

■ The final question is whether the trial court was correct in making the second notice effective as of the day

it was received rather than the day it was mailed. In construing other statutes directing notice by certified or registered mail as an alternative to personal service, the Supreme Court has held that notification is not complete until a reasonable time for transmission and receipt of the notice has elapsed. *Robel v. Highline Public Schools, Dist. 401, supra; Van Duyn v. Van Duyn, supra.* The 3 days which elapsed between mailing of the second notice and its receipt by CHG constituted a reasonable time. The trial court properly used the date of actual receipt to calculate the amount of the lien.

Affirmed.

FARRIS and RINGOLD, JJ., concur.

Reconsideration denied June 22, 1979.

Review denied by Supreme Court September 21, 1979.